Filed 3/25/16  P. v. Lara CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

THE PEOPLE,

    Plaintiff and Respondent,

        v.

ALFREDO GUERRERO LARA,

    Defendant and Appellant.

F070165

(Super. Ct. No. BF148788A)

**OPINION**

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Lorna H. Brumfield, Judge.

Sara E. Coppin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel Bernstein, Kathleen A. McKenna and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Gomes, Acting P.J., Kane, J. and Smith, J.

Appellant Alfredo Guerrero Lara appeals his convictions on four counts of driving under the influence with prior offenses (Veh. Code, §§ 23152, subd. (a), 23550/count 1; §§ 23152, subd. (b), 23550/count 2; §§ 23152, subd. (a), 23550.5/count 3; and §§ 23152, subd. (b), 23550.5/count 4). Appellant claims his convictions should be reversed due to an alleged violation of his Sixth Amendment right to confront the witnesses against him. Appellant also challenges the imposition of both the upper term of three years on count 4 and a mandatory one-year prior prison term enhancement, asserting that the trial court improperly relied on the same facts to justify both. (Pen. Code, § 667.5.) For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

While on patrol on the morning of June 2, 2013, California Highway Patrol Officer Scott Evans noticed a gray Honda Accord with blue headlights. Recognizing the blue headlights were a mechanical violation, Officer Evans stopped the vehicle. Appellant was the driver and sole occupant of the vehicle.

When appellant rolled down his window, Officer Evans noticed a very strong odor of alcohol coming from the vehicle. Appellant had red and watery eyes, and his speech was thick and slurred. Officer Evans asked appellant if he had been drinking. At first appellant said he had a couple of beers, but later clarified that he had consumed four Budweiser beers. Officer Evans then conducted multiple field sobriety tests, including the horizontal gaze nystagmus test, the modified Romberg balance test, the one-leg stand, the hand pat test, and the finger count test. Based on Officer Evans's observations of the testing, he concluded appellant was "definitely showing signs of impairment."

Appellant was arrested and elected to submit a blood sample for testing. The results of that testing showed appellant's blood-alcohol content to be 0.15 percent.

Appellant was tried and convicted on four counts of driving under the influence. He was sentenced to four years on count 4; the upper term of three years on the

conviction, plus a mandatory one-year prior prison term enhancement. (Pen. Code, § 667.5.) Appellant's sentences on counts 1, 2 and 3 were stayed.

## DISCUSSION

*Alleged Violation of the Confrontation Clause*

Appellant claims the trial court violated his Sixth Amendment right to confront the witnesses against him by admitting into evidence a "Report of Examination" (Report) from the Kern Regional Crime Laboratory (Crime Lab) setting forth his blood-alcohol level based only on the testimony of the lab technician who conducted the tests but who had not authored or signed the Report. It is also argued that the testimony of the lab technician was wholly contingent on the Report and thus her testimony could not properly be used to support the conviction.

At trial, the People called Corina Anderson, a forensic lab technician in the toxicology section of the Crime Lab, to testify regarding the results of gas-chromatographic analyses of appellant's blood. Through Ms. Anderson's testimony, the People moved the Report containing those results into evidence. Although Ms. Anderson testified she conducted the tests and inputted the data regarding appellant's blood-alcohol content into the database from which the Report was generated, Ms. Anderson's name was not on the Report because, as a lab technician, Ms. Anderson was "not allowed to draft, complete, or technically review casework." Rather, two criminalists from the Crime Lab signed the two-page Report. Neither criminalist testified at trial and neither was shown to be unavailable.

Appellant contends that admitting the Report and foundational testimony about it was erroneous because he could not cross-examine either of the criminalists who signed the Report. Appellant further contends that the error was not harmless because the blood-alcohol content data in the Report was critical to the People's case.

3

*Standard of Review and Applicable Law*

"The Sixth Amendment to the federal Constitution guarantees a defendant's right to confront adverse witnesses. [Citation.] In addition, the prosecution may not rely on 'testimonial' out-of-court statements unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination." (*Crawford v. Washington* (2004) 541 U.S. 36, 59.) As interpreted by our Supreme Court, at least two factors must be considered to determine whether a statement is testimonial. "First, to be testimonial the statement must be made with some degree of formality or solemnity. Second, the statement is testimonial only if its primary purpose pertains in some fashion to a criminal prosecution." (*People v. Dungo* (2012) 55 Cal.4th 608, 619.) However, "[i]t is evident that Sixth Amendment jurisprudence following the Supreme Court's decision in *Crawford v. Washington* [, *supra*, 541 U.S. 36] remains in considerable flux." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 395 (*Bryant*).) Indeed, courts have spent significant effort collecting and summarizing the various permutations of the doctrine. (*See, e.g.*, *People v. Barba* (2013) 215 Cal.App.4th 712, 714-733.)

Courts "need not venture into that thicket" in all instances. (*Bryant*, *supra*, 60 Cal.4th at p. 395.) "'"'Confrontation clause violations are subject to federal harmless-error analysis under *Chapman v. California* (1967) 386 U.S. 18, 24.' [Citation.] We ask whether it is clear beyond a reasonable doubt that a rational jury would have reached the same verdict absent the error.'"'" (*People v. Capistrano* (2014) 59 Cal.4th 830, 873 (*Capistrano*).)

*Ms. Anderson's Testimony Was Properly Admitted*

Appellant's claim requires us to conclude that Ms. Anderson had no independent recollection of testing appellant's blood, and thus necessarily relied on the Report for all of her relevant testimony. If true, says appellant, Ms. Anderson's testimony violated the confrontation clause. We disagree.

4

The record does not support appellant's contention that Ms. Anderson lacked any independent recollection of her actions. Appellant's sole citation to the record for this point pertains to questions about Ms. Anderson's general recollection of the testing. In that questioning, Ms. Anderson confirmed she did not have an "independent recollection of everything that happened with that one specific vial in this case" because she had done thousands of similar tests. However, Ms. Anderson also confirmed that she had kept records of her tests, which she had reviewed to recall that she had tested the sample in this case.

Appellant contends that the records Ms. Anderson referred to are the contested Crime Lab Report. But this is not the case. Prior to being shown the contested Report, Ms. Anderson disclosed that she had reviewed "inhouse records and reports and other materials" in preparation for her testimony, as well as a "discovery packet." One of the in-house records Ms. Anderson discussed was a "run list," on which she placed all of her test results before inputting them into a computer system. Ms. Anderson's subsequent testimony confirmed that she recalled more than what was in the Report. While the Report contains a single notation that appellant's blood-alcohol content was 0.15 percent, Ms. Anderson testified that she obtained test results on two separate days showing a blood-alcohol content of 0.157 percent, a figure she could not have known from simply reviewing the Report.

Given the record, appellant's reliance on *Bullcoming v. New Mexico* (2011) 564 U.S. ____, 131 S.Ct. 2705 (*Bullcoming*), is misplaced. In *Bullcoming*, the United States Supreme Court considered whether introducing into evidence a certified report through the testimony of a supervisor "who did not sign the certification or perform or observe the test reported in the certification" violated the confrontation clause. (*Id.* at p. 2710.) The Supreme Court found that admitting the report was a violation, in part, because the report contained several statements from the nontestifying analyst on

5

evidence handling and testing procedures, which were "meet for cross-examination." (*Id.* at p. 2714).

In this case, a different scenario has arisen. The technician who performed the tests and entered the data utilized in the Report was called to testify, while the supervising criminalists were not. Because the testing technician could and did testify, subject to cross-examination, regarding the handling of evidence, the testing procedures, and the results obtained, any violation of the confrontation clause as described in *Bullcoming* was limited to those aspects of the Report which were not the result of Ms. Anderson's work. Appellant has identified no allegedly prejudicial statements in the Report other than the blood-alcohol content results that Ms. Anderson generated.

This case is therefore factually similar to *Capistrano*, *supra*, 59 Cal.4th 830. In that case, the trial court permitted a witness to discuss DNA testing results from two different tests. (*Id.* at p. 871.) However, the testifying witness had only performed one of those tests, the other having been done by a different analyst. (*Ibid.*) Our Supreme Court found no error in allowing the witness to testify about the tests she had personally run. (*Id.* at p. 872.) And when that testimonial evidence was considered with the other evidence of guilt adduced at trial, any error in also permitting testimony on the nonperformed test was harmless. (*Id.* at p. 873.)

So too, here. When Ms. Anderson's testimony on the tests she ran is combined with Officer Evans's testimony of the very strong odor of alcohol emanating from appellant's car, appellant having red, watery eyes, and thick, slurred speech, appellant admitting to drinking multiple beers, and appellant failing multiple field sobriety examinations, the evidence is sufficient to conclude beyond a reasonable doubt that appellant would have been found guilty without the introduction of the Report.

6

*Any Error in Admitting the Report was Harmless*

We need not determine whether the Crime Lab Report itself was testimonial in nature or whether its introduction into evidence violated the confrontation clause. Even assuming error, it is evident any such error was harmless.

Appellant argues it would be "impossible for respondent to show that the improperly admitted evidence did not contribute to the guilty verdict" because the "forensic evidence that appellant's blood alcohol content was .15% was central to the prosecution's case against appellant for all the counts, and in particular for the counts alleging a blood alcohol content of .08% or higher." We disagree.

Excluding the Report from evidence does not remove from the record Ms. Anderson's testimony regarding the test results she obtained when she personally ran the gas-chromatographic analyses of appellant's blood. Accordingly, the jury was properly informed that Ms. Anderson received two vials of appellant's blood, removed and ran tests on blood from one of those vials on two separate days, followed her standard protocols, which she fully described, and found both tests returned blood-alcohol content results of 0.157 percent. As discussed above, this was sufficient to support appellant's conviction.

**Alleged Sentencing Violation**

Appellant claims his sentence is illegal because the trial court relied on the same facts to justify imposing both the upper term on count 4 and the one-year prior prison term enhancement.

Relying on appellant's history and the recommendation of the probation officer, the trial court sentenced appellant to the upper term of three years on count 4 and added an additional one-year prior prison term enhancement under Penal Code section 667.5. The court further ordered three-year terms on each of the three remaining counts, but stayed those sentences.

The probation report noted five prior convictions for driving under the influence, along with a juvenile petition, a prior misdemeanor conviction, and a pending charge the People confirmed they would not pursue. The probation report listed two circumstances in aggravation: (1) "defendant's prior convictions as an adult and sustained petitions in juvenile delinquency proceedings are numerous"; and (2) "defendant's prior performance on probation, not stated above, was unsatisfactory in that he continued to violate terms and re-offend."

Appellant contends the trial court erred in sentencing him to the upper term on count 4, while also imposing the one-year prior prison term enhancement. Appellant argues that the court improperly used the fact of appellant's enhancement to impose the upper term. (Pen. Code, § 1170, subd. (b).)

*Standard of Review and Applicable Law*

In imposing a sentence, the trial court "may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (Pen. Code, § 1170, subd. (b).) "'Improper dual use of the same fact for imposition of both an upper term and a consecutive term or other enhancement does not necessitate resentencing if "[i]t is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error."'" (*People v. Osband* (1996) 13 Cal.4th 622, 728 (*Osband*).) "Only a single aggravating factor is required to impose the upper term …." (*Ibid.*) The trial court's sentence is ultimately reviewed under the abuse of discretion standard. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

"In order to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims, reviewing courts have *required* parties to raise certain issues at the time of sentencing. In such cases, lack of a timely and meaningful objection forfeits or waives the claim." (*People v. Scott* (1994) 9 Cal.4th 331, 351 (*Scott*).) This doctrine applies to "cases in which the court purportedly erred because it

8

double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*Id.* at p. 352.)

Where counsel wrongly fails to object, a claim of ineffective assistance of counsel may arise. However, such a claim requires the court to consider "whether counsel's assistance was reasonable considering all the circumstances." (*Strickland v. Washington* (1984) 466 U.S. 668, 688.) This analysis requires demonstrating both that counsel's conduct was deficient and that the deficient performance prejudiced the defense. (*Id.* at p. 687.)

*The Alleged Error is Harmless*

Appellant admits that no objection to the trial court's sentence was made. This issue has thus been forfeited. (*Scott*, *supra*, 9 Cal.4th at pp. 351-352.) Appellant's reliance on *People v. Zito* (1992) 8 Cal.App.4th 736 (*Zito*) is misplaced because the contested sentence in this case is not "unauthorized by the Penal Code." (*Id.* at pp. 741-742.) As our Supreme Court explained in *Scott*, unauthorized sentences are those which "could not lawfully be imposed under any circumstance in the particular case." (*Scott*, *supra*, 9 Cal.4th at p. 354.) In contrast, forfeitable errors "involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner." (*Ibid.*) The alleged error here is procedural in nature and thus may be forfeited.

Appellant further contends that a finding of forfeiture demonstrates ineffective assistance of counsel. We disagree. Although the court imposed the one-year prior prison term enhancement pursuant to one of appellant's two 2008 convictions, excluding both 2008 convictions still leaves the court with a history of three previous convictions for driving under the influence and a separate aggravating circumstance of prior unsatisfactory performance on parole resulting in re-offending conduct. This history, disclosed in the probation report, supports the court's use of appellant's history to impose the upper term. (*Osband*, *supra*, 13 Cal.4th at p. 728.) Any error in failing to specifically

9

exclude the conviction supporting the one-year prior prison term enhancement from the court's analysis was therefore harmless and cannot support the finding of prejudice necessary to demonstrate ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.